1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CHRISTINA HUMPHREY LAW, P.C.**
Christina A. Humphrey (SBN 226326)
8330 Allison Ave., Suite C.
La Mesa, California 91942
Telephone: (619) 488-6400
christina@chumphreylaw.com

**GESSNER LAW, PLLP**
L. Michelle Gessner (Appearance Pro Hac Vice)
Post Office Box 78161
Charlotte, North Carolina 28271
Telephone: (844) 437-7634
michelle@mgessnerlaw.com
Attorneys for Plaintiffs Denise Droesch and Shakara Thompson,
and other individuals similarly situation

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DROESCH and SHAKARA THOMPSON, individually, and on behalf of all others similarly situated<br><br>        Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., a United States Corporation, and DOES 1 – 100, inclusive<br><br>        Defendants. | **CASE NO.**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF FLSA AND STATE LAW**<br><br>**(1)**   **Violation Fair Labor Standards Act, 29 U.S.C. § 201** *et se*<br><br>**(2)**   **Violation N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13**<br><br>**(3)**   **Violation California Labor Code §§ 510 and 1194**<br><br>**(4)**   **Violation California Labor Code §§ 1182.12, 1194, 1197, 1194.2 and 1198**<br><br>**(5)**   **Violation California Labor Code §§ 221-223**<br><br>**(6)**   **Violation California Labor Code §§ 201, 202, 203 and 256**<br><br>**(7)**   **Violation California Labor Code § 226**<br><br>**(8)**   **California Business & Professions Code § 17200 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Denise Droesch and Shakara Thompson, individually and on behalf of all other similarly situated employees (hereinafter collectively referred to as ("Plaintiffs" or "Representative Plaintiffs"), bring this lawsuit against Defendant Wells Fargo, N.A. ("Wells Fargo" or "Defendants"), and allege as follows:

## INTRODUCTION

1.      Defendant Wells Fargo employs the telephone-based workers who are the putative class members in this lawsuit.

2.      Plaintiff DROESCH worked as a telephone-dedicated employee in the position of Premier Phone Banker at Wells Fargo's California Business Banking Call Center.  Plaintiff THOMPSON worked as a telephone-dedicated employee in the position of Financial Crimes Specialist III at Wells Fargo's Charlotte, North Carolina Fraud Department Call Center.

3.      Plaintiffs and similarly situated employees had to be ready to handle a call at the start of their scheduled shift times.  In order to be ready to handle a call, Plaintiffs and similarly situated employees had to first boot up their computers and open various software programs necessary for handling a call.  Plaintiffs and similarly situated employees had to be available to handle calls until the end of their scheduled shift time.

4.      Defendant knowingly required and/or permitted Plaintiffs and other similarly situated telephone-dedicated employees to perform unpaid work before and after their scheduled shift times.  This unpaid work includes but is not limited to booting up computers, initializing several software programs, reading company issued emails and instructions at the beginning of their shifts, and completing customer service calls, securing their workstations, locking their desk drawers, and securing any customer or proprietary information at the end of their shifts.

5.      Defendant maintained a policy and practice of failing to pay Plaintiffs and Class Members for all hours worked, such as the time engaged in work tasks completed before and after their shift.  Plaintiffs and Class Members spent significant time performing this work off the clock and Defendant did not pay them for this time.

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW

Because much of this time qualifies as overtime within the meaning of applicable federal and state laws, Plaintiffs and Class Members were not paid overtime for this time.

6.      Defendant's conduct violates the FLSA, which requires non-exempt employees to be compensated for all hours worked including overtime work at a rate of one and one-half times their regular rate of pay.  (See 29 U.S.C. § 207(a).)

7.      Plaintiff, individually and on behalf of all others similarly situated, seeks to recover unpaid wages and other damages owed under (1) the Fair Labor Standards Act ("FLSA") as a 29 U.S.C. § 216 collective action, (2) NCWHA, N.C. Gen. Stat. §§ 95-25.1 et seq. for failure to pay as promised, (3) California Labor Code §§ 510 and 1194 for unpaid overtime compensation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (4) California Labor Code §§ 1182.12, 1194, 1197, 1194.2 and 1198 for unpaid minimum wages as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (5) California Labor Code §§ 221-223 for unpaid regular wages as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (6) California Labor Code §§201-203, 204 and 256 for failure to timely pay wages and upon termination as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (7) California Labor Code § 226 for failure to provide accurate wage statements as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and (8) California Business & Professions Code § 17200 et seq. as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over Plaintiffs' FLSA claims in this action under 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claim and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW

10.     Venue is proper in the Northern District of California because a substantial portion of the events and policies forming the basis of this suit occurred in this district.  Wells Fargo is headquartered in San Francisco, California.

## PARTIES

11.     Plaintiff Denise Droesch is an individual currently residing in Sacramento, California who Defendant employed from approximately December 2019, to approximately March 2020, as an hourly, non-exempt premier phone banker at Business Banking Call Center operated by Wells Fargo located in Sacramento, California. Droesch's written consent form is attached hereto at Exhibit A.

12.     Plaintiff Shakira Thompson is an individual currently residing in Charlotte, North Carolina who Defendant has employed since approximately October 12, 2015, and currently employs, as an hourly, non-exempt Financial Crimes Specialist III at the Fraud Department Call Center operated by Wells Fargo located in Charlotte, North Carolina.  Thompson's written consent form is attached hereto at Exhibit B.

13.     Wells Fargo is an international bank that offers services related to banking, loans and credit, insurance, investing and wealth management.  Wells Fargo operates Fraud Department Call Centers in California, as well as other locations, where telephone-dedicated hourly employees handle phone calls with Wells Fargo customers regarding fraudulent and potentially fraudulent transactions on their accounts.

## CLASS AND COLLECTIVE DEFINITIONS

14.     Plaintiffs bring this action on behalf of a proposed nationwide collective of all individuals working in the non-exempt position of  "Telephone Banker" from three years prior to the filing of this complaint onward, under the Fair Labor Standards Act ("FLSA"), as set forth in more detail below (the "FLSA Collective"). This definition excludes persons who perform or performed management duties.  The FLSA Collective Members are similarly situated to Plaintiffs and to each other.  The FLSA Collective also includes a Sub-Class of FLSA Collective Members who did not execute arbitrations agreements during their employment.

15.     Plaintiffs bring this action on behalf of a proposed class action of all individuals working in the non-exempt position of "Telephone Banker" in the State of California from four years prior to the filing of this complaint onward (the "California Class"). This definition excludes persons who perform or performed management duties. The California Class Members are similarly situated to Plaintiff Droesch and each other. The California Class also includes a Sub-Class of California Class Members whose employment has terminated and a Sub-Class of California Class Members who did not execute arbitrations agreements during their employment.

16.     Plaintiffs bring this action on behalf of a proposed class action of all individuals working in the non-exempt position of "Telephone Banker" in the State of North Carolina from three years prior to the filing of this complaint onward (the "North Carolina Class"). This definition excludes persons who perform or performed management duties. The North Carolina Class Members are similarly situated to Plaintiff Thompson and each other. The North Carolina Class also includes a Sub-Class of North Carolina Class Members who did not execute arbitration agreements during their employment.

## **FLSA COVERAGE**

17.     At all material times, Defendant has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

18.     At all material times, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

19.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Defendant has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

20.     Defendant has an annual gross business volume of not less than $500,000.

21.     Defendant controlled the hours to be worked by Plaintiffs and Class Members, provided training to Plaintiffs and Class Members, directed the work of

Plaintiffs and Class Members, maintained communication with Plaintiffs and Class Members and received updates as to the status of their work, and provided direction on how each assigned task was to be performed by Plaintiffs and Class Members.

## FACTUAL ALLEGATIONS

**A.   Defendant's Practice of Requiring and/or Permitting Telephone-Based Hourly Employees to Work Before the Start of and After the End of Their Scheduled Shift Time.**

22.     Wells Fargo operates and has operated "call centers" across the nation where telephone-dedicated employees similar to Plaintiffs handle phone calls regarding various issues related to Wells Fargo's business.

23.     Defendant's policy and practice permits and/or requires telephone-based employees in its Call Centers to be logged into their phones by the employee's scheduled start time.

24.     Wells Fargo required Plaintiffs and similarly situated phone-based employees to be ready to handle a call at the start of their scheduled shift time.  Wells Fargo maintained similar requirements at all its Call Centers across the nation.

25.     In order to be ready to handle a call, Plaintiffs and similarly situated telephone-dedicated employees had to be logged into Wells Fargo's telephone systems and call queue.

26.     In order to be logged into Wells Fargo's telephone systems and call queue, Defendant required and/or permitted Plaintiffs and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and/or instructions.

27.     Defendant's policy and practice results in telephone-based employees, including passing through security steps if their computer screen was at Check Point when they logged on.  Check Point required Plaintiffs and other similar situated employees to follow key prompts to get an access code or speak to a representative at

the help desk.  Following the Check Point process was a frequent occurrence and could take a few to several minutes each day.

28.     After accessing their computers, Plaintiffs and other similarly situated employees were required to open and initialize several software programs, such as DAT, Hogan, CIV, Visa, Claims, SOTA, among others.  Opening all the necessary programs and systems would take additional time.  Plaintiffs and other similarly situated employees sometimes were required to read company emails and instructions prior to their start of their scheduled shift time.

29.     Only after all the processes are completed and programs started could Plaintiffs and other similarly situated employees log into Soft Phone, which commenced and recorded the paid portion of their workday.

30.     Defendant's policy and practice disciplines telephone-based employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

31.     Defendant did not instruct Plaintiffs and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time.  Rather, Defendant required, permitted and/or allowed Plaintiffs and the putative class members to work prior to and after their scheduled shift time.

32.     At the end of their shift, Plaintiffs and similarly situated phone-based employees were expected to be available to handle a call until the end of their scheduled shift time.  As a result, Plaintiffs and similarly situated telephone-based employees regularly worked past the end of their scheduled shift times when logged off their software programs and computers and secured their work stations and Wells Fargo's customer and proprietary information pursuant to Wells Fargo's policies and practices.

33.     Plaintiffs and similarly situated phone-based employees at Wells Fargo's Call Centers had their pre- and/or post-shift work rounded away from their pay and

were regularly not paid for some or all of their work activities prior to the beginning of their shifts or after the end of their shifts.

34.     Prior to starting work on the call center floor, Plaintiffs and other similarly situated telephone-based employees were and are interviewed by employees and managers of Wells Fargo.

35.     Wells Fargo had the power to hire and fire Plaintiffs and other persons similarly situated.  Wells Fargo controlled and set the schedules for Plaintiffs and similarly situated telephone-dedicated workers.

**B.     Defendant Knew of and Assented to the Unpaid Work.**

36.     At the Wells Fargo Call Centers managers were on the floor during the workday, managing the work activities of the Plaintiffs and other similarly situated persons.

37.     Defendant monitored, directed, and controlled the work activities of Plaintiffs and other similarly situated persons, including the unpaid work at issue.

38.     Wells Fargo's managers and supervisors on the call center floor could and did regularly see with their own eyes that Plaintiffs and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into Wells Fargo's computers, and began working on their computers prior to the start of their scheduled shift time.

39.     Wells Fargo's managers and supervisors on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees worked past the end of their scheduled shift time handling phone calls and securing their work stations.

40.     Despite seeing and knowing that Plaintiffs and similarly situated telephone-based employees performed work at their work stations prior to and after their scheduled shift times, Defendant and its managers and supervisors on the floor of the call center did not make any effort to stop or otherwise disallow this unpaid work and instead allowed and permitted it to happen.

41.     Defendant possesses, controls and/or has access to information and electronic data that shows the times Plaintiffs and similarly situated telephone-based employees logged into and out of their computers each day and the time they logged into and out of their telephone systems each day.

42.     By possessing, controlling and/or accessing this information, Defendant knew that Plaintiffs and similarly situated telephone-based employees worked prior to the start and after the end of their scheduled shift time.

43.     Despite having this information and knowing that Plaintiffs and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, and despite requiring and/or allowing them to handle a call up until the end of their scheduled shift time, Defendant did not make any effort to stop or otherwise disallow the pre- or post-shift work and instead allowed and permitted it to happen.

44.     Defendant knowingly required and/or permitted Plaintiffs and those similarly situated to him to perform unpaid work before and after the start and end times of their shifts, including booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, as well as completing customer service calls, closing down the software programs, logging off the system, securing their workstations, locking their desk drawers, and securing any customer or proprietary information after the end of their scheduled shift times.

**C.     Defendant's Failure to Pay Minimum, Regular, and Overtime Wages to Its Telephone-Based Hourly Employees.**

45.     Defendant determined the rate of pay for Plaintiffs and other similarly situated persons.

46.     Defendant's managers and supervisors reviewed and approved Plaintiffs and other similarly situated persons' time records prior to receiving their paychecks.

47.     Defendant supervised and controlled the work schedule of Plaintiffs and other similarly situated persons.

48.     Plaintiffs and those employees similarly situated are individuals who were, or are, employed by Defendant and who had their pre- and/or post-shift work rounded away from their pay and were not paid for some or all of their work activities prior to the beginning of their shifts or after the end of their shifts.

49.     Plaintiffs and the other employees are also similar because Defendant did not pay them for all time they actually worked.

50.     The net effect of Defendant's policies and practices, instituted and approved by company managers and supervisors, is that Defendant willfully failed to pay all compensation owed to Plaintiffs and others similarly situated, and willfully failed to keep accurate time records to save payroll costs.  Defendant thus enjoyed ill-gained profits at the expense of its hourly employees.

51.     Plaintiffs and others similarly situated at times work or worked in excess of forty hours per week for Defendant in a given workweek.

52.     Defendant's policy and practice of requiring and/or permitting its employees, including Plaintiffs and other non-exempt, hourly employees, to perform work without pay for such work performed, violates the FLSA, the California Labor Code, and the NCWHA.

53.     Defendant's policy and practice of requiring its employees to perform work without pay in many instances has caused and continues to cause Plaintiffs and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a minimum or regular wage or 1.5 times their respective hourly rate for such work performed.

54.     Defendant's failure to compensate its non-exempt, hourly call center employees with the full amount of the applicable minimum or regular wage or overtime wage has caused Plaintiffs and other similarly situated non-exempt call center employees to suffer harm.

55.     Defendant's non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

57.     Plaintiffs have actual knowledge that the FLSA Class Members have also been denied minimum, regular, and overtime pay for all hours worked.  Plaintiffs worked with other FLSA Collective Members, and as such, have personal knowledge of their existence, off the clock work and overtime violations.

58.     Other FLSA Collective Members worked for Defendant in a similar capacity and were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

59.     FLSA Collective Members perform or have performed the same or similar work as Plaintiffs, regularly work or have worked in excess of forty hours during a workweek, and are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

60.     Plaintiffs estimate that Defendant has employed more than 1000 FLSA Collective Members working throughout the United States during the last three years who were paid an hourly rate.

61.     Defendant suffered or permitted such workers to work in the last three years and failed to compensate them for all hours worked.

62.     Defendant's failure to pay minimum, regular, and overtime compensation at the rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

63.     The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Collective Members.

64.     The specific job titles or precise job responsibilities of each FLSA Collective Member does not prevent collective treatment.

65.     All FLSA Collective Members, irrespective of their particular job requirements, are entitled to minimum, regular, and overtime compensation at the rate of time and a half for hours worked in excess of forty during a workweek.

66.     Although the exact amount of damages may vary among FLSA Collective Members, the damages can be readily calculated by reference to Defendant's records and, if necessary, representative testimony.   The claims of all FLSA Collective Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Collective Members.

## CALIFORNIA CLASS ALLEGATIONS

67.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

68.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the "California Class," as defined in above.

69.     **Numerosity.**  Plaintiffs estimate the size of the California Class to be at least 500 individuals.  This size makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the California Class as a plaintiff in this action is impracticable.  The identity of the members of the California Class will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.   To require individual actions would prejudice the California Class and Defendant.

70.     **Typicality.**   Plaintiff Droesch's claims are typical of those of the California Class because like the members of the California Class Members, Plaintiff Droesch was subject to Defendant's uniform policies and practices and was compensated in the same manner as others in the California Class.  Defendant failed to pay the California Class Members compensation for all hours worked, permit timely

and compliant meal and rest breaks, pay premium wages, pay timely wages regularly and upon termination, and provide accurate and itemized wage statements.

71.     Plaintiff Droesch and the California Class Members have been uncompensated and/or under-compensated as a result of Defendant's common policies and practices, which failed to comply with California law.

72.     **Adequacy**.  Plaintiff Droesch is a representative party who will fairly and adequately protect the interests of the California Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under California law.  Plaintiff Droesch has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff Droesch does not have any interest which may be contrary to or in conflict with the claims of the California Class she seeks to represent.

73.     **Commonality.**  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact and law include, but are not limited to:

     a.  Whether Defendant had a policy or practice of requiring Plaintiff Droesch and California class members to perform work off-the-clock;

     b.  Whether Defendant failed to pay Plaintiff Droesch and the California Class Members minimum, regular, and overtime wages for all hours worked;

     c.  Whether Defendant failed to provide meal and rest breaks to Plaintiff Droesch and the California Class Members;

     d.  Whether Defendant failed to pay premium wages to Plaintiff Droesch and the California Class Members;

     e.  Whether Defendant failed to pay Plaintiff Droesch and the California Class Members all of their wages earned and due regularly and upon the termination of their employment;

f.  Whether Defendant provided Plaintiff Droesch and the California Class Members timely and accurate wage statements;

74.     **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the California Class could afford to pursue individual litigation against companies the size of Defendant, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the California Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

75.     **Manageability**.  A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy, and parity among the claims of individual California Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Trial of Plaintiff's class claims will be manageable because Plaintiff can rely on Defendant's records, corporate testimony from Defendant's management, and representative testimony from Class Members.

76.     Notice of the pendency and any resolution of this action can be provided to the California Class by mail, electronic mail, print, broadcast, internet and/or multimedia publication.  The identity of members of the California Class is readily identifiable from Defendant's records.

77.     This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; (2) the burden is on Defendant to prove that it properly compensated Plaintiff and Class Members; and (3) the burden is on Defendant to accurately record hours worked by employees.

78.     Ultimately, a class action is a superior form to resolve the California claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff Droesch and the California Class Members according to applicable California laws.

### NORTH CAROLINA CLASS ALLEGATIONS

79.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

80.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the "North Carolina Class," as defined above.

81.     **Numerosity.**  Plaintiffs estimate the size of the North Carolina Class to be at least 100 individuals.  This size makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the North Carolina Class as a plaintiff in this action is impracticable.  The identity of the members of the North Carolina Class will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the North Carolina Class and Defendant.

82.     **Typicality.**  Plaintiffs Thompson's claims are typical of those of the North Carolina Class because like the members of the North Carolina Class Members, Plaintiff Thompson was subject to Defendant's uniform policies and practices and was compensated in the same manner as others in the California Class.  Defendant failed to pay the North Carolina Class Members as promised for all hours worked.

83.     Plaintiff Thompson and the North Carolina Class were paid at hourly rates below the promised rate for hours worked and have not been uncompensated as promised and/or under-compensated as a result of Defendant's common policies and practices, which failed to comply with North Carolina law.

84.     **Adequacy**.  Plaintiff Thompson is a representative party who will fairly and adequately protect the interests of the North Carolina Class because it is in her

interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under North Carolina law.  Plaintiff Thompson has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff Thompson does not have any interest which may be contrary to or in conflict with the claims of the North Carolina Class she seeks to represent.

85.     **Commonality.**  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to whether Plaintiff Thompson were paid as promised.

86.     The common issues of law include, but are not limited to whether Plaintiff Thompson and the members of the North Carolina Class are entitled to compensatory damages; the proper measure of damages sustained by Plaintiff Thompson and the North Carolina Class; and Whether Defendant's actions were "willful."

87.     **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the North Carolina Class could afford to pursue individual litigation against companies the size of Defendant, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the North Carolina Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

88.     **Manageability**.  A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual North Carolina Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Trial of Plaintiffs' class claims will be manageable because Plaintiff can rely on Defendant's records, corporate

testimony from Defendant's management, and representative testimony from Class Members.

89.     Notice of the pendency and any resolution of this action can be provided to the North Carolina Class by mail, electronic mail, print, broadcast, internet and/or multimedia publication.  The identity of members of the North Carolina Class is readily identifiable from Defendant's records.

90.     This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; (2) the burden is on Defendant to prove that it properly compensated Plaintiffs and Class Members; and (3) the burden is on Defendant to accurately record hours worked by employees.

91.     Ultimately, a class action is a superior form to resolve the North Carolina claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiffs and the North Carolina Class Members according to applicable North Carolina laws.

92.     At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

93.     At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## **FIRST CAUSE OF ACTION**

### **NATIONWIDE: Failure to Pay Minimum, Regular, and Overtime Wages**

### **(Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*)**

### **On Behalf of Plaintiffs and the FLSA Collective**

94.     Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein Plaintiffs, individually and on behalf and the members of the class assert claims for unpaid minimum, regular, and overtime wages pursuant to the FLSA.

95.     At any and all times relevant hereto, Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

96.     At any and all times relevant hereto, Defendant was an "employer" of the Plaintiffs and the members of the class described in paragraph 67 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

97.     At any and all times relevant hereto, Plaintiffs and the members of the class described in paragraph 67 were "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

98.     Plaintiffs and the members of the class described in paragraph 67 were not paid for all time worked during the applicable statutory time period, in violation of the provisions of the FLSA, including 29 U.S.C. §§ 201, 207, 216, and 29 C.F.R. §778.223 and 778.315.

99.     At all times relevant hereto, Defendant's failure to pay Plaintiffs and the members of the class pay for all time worked was willful in that, among other things: (a) Defendant knew that the FLSA required it to pay for all time worked; (b) Defendant failed to maintain true and accurate time records; (c) Defendant encouraged Plaintiffs and other similarly situated employees to not record all time worked; and (d) at times, Defendant changed the times that Plaintiffs worked

100.    As a direct and proximate result thereof, Plaintiffs and the members of the class described are due unpaid back wages and liquidated damages, interest and statutory costs as provided by law.

///

///

///

///

///

///

**SECOND CAUSE OF ACTION**

**NORTH CAROLINA: Failure to Pay as Promised**

**(N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13)**

**On Behalf of Plaintiffs Thompson and the North Carolina Class**

101.     Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

102.     This cause of action arises from Defendant's policy and practice of suffering or permitting Plaintiff and/or other similarly situated hourly employees to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

103.     Defendants violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiff and similarly situated hourly employees all promised and earned wages and overtime payments on the employees' regular payday for all hours worked.  For example, Wells Fargo allowed, encouraged, or required Plaintiff and the North Carolina Class Members to clock out during their shifts, including during time opening necessary programs, following instructions, and reading emails.  Despite the provisions of North Carolina law, Defendant has willfully failed and refused to pay the North Carolina Class, including Plaintiff Thompson, wages for any of the off-the-clock hours they worked.

104.     As a direct and proximate result thereof, Plaintiffs and the members of the class described are due unpaid back wages and liquidated damages, interest and statutory costs as provided by law.

///

///

///

///

///

## **THIRD CAUSE OF ACTION**

### **CALIFORNIA: Failure to Pay Overtime Wages**

### **(California Labor Code §§ 510 and 1194)**

### **On Behalf of Plaintiff Droesch and the California Class**

105.   Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein

106.   At all relevant times, Defendant was required to compensate its nonexempt employees for all hours worked.  Since at least four years prior to this lawsuit being filed to the present, Defendant was required to compensate all of its employees for all overtime worked, at one-and-a-half times their regular rates of pay for hours worked in excess of eight hours per day or forty hours per workweek, and double-time for hours worked in excess of twelve (12) hours per day.  Defendant was also required to pay one-and-a-half times the regular rate for the first eight hours worked on the seventh day of a workweek.

107.   Defendant failed to properly record and pay for Plaintiff Droesch's and the California Class Members' hours worked, including overtime.  For example, Wells Fargo allowed, encouraged, or required Plaintiff and the California Class Members to clock out during their shifts, including during time opening necessary programs, following instructions, and reading emails.  Despite the provisions of California's overtime law, Defendant has willfully failed and refused to pay the California Class, including Plaintiff Droesch, overtime wages for any of the overtime hours they worked.

108.   The California Class, including Plaintiff Droesch, has been deprived of their rightfully earned overtime wages as a direct and proximate result of Defendant's failure and refusal to pay such compensation.

109.   Defendant's conduct violates California Labor Code §§ 510 and 1194. Therefore, pursuant to California Labor Code § 1194, the California Class, including Plaintiff Droesch, is entitled to recover, and seeks to recover, damages for the

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW

nonpayment of overtime wages for all overtime hours worked in excess of eight hours per day, in excess of forty hours per workweek, for the first eight hours worked on the seventh day of a workweek, and double-time pay for the hours worked in excess of twelve in a day in addition to interest on such amounts pursuant to California Labor Code § 1194, plus reasonable attorneys' fees and costs of suit, and the relief requested below in the Prayer for Relief.

### FOURTH CAUSE OF ACTION

**CALIFORNIA: Failure to Pay Minimum Wage**

**(California Labor Code §§ 1182.12, 1194, 1197, 1194.2 and 1198)**

**On Behalf of Plaintiff Droesch and the California Class**

110.     Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

111.     At all relevant times, Plaintiff Droesch and the California Class Members earned "wages" for labor or services rendered to Defendant within the meaning of California Labor Code § 200(a) and/or "hours worked" within the meaning of the applicable Wage Order of the Industrial Wage Commission.

112.     Employers are required to pay their employees for all hours worked. Defendant failed to properly record and pay for Plaintiff Droesch's and the California Class Members' hours worked.  For example, Wells Fargo allowed, encouraged, or required Plaintiff and the California Class Members to clock out during their shifts, including during time opening necessary programs, following instructions, and reading emails.  Despite the provisions of California's overtime law, Defendant has willfully failed and refused to pay the California Class, including Plaintiff Droesch, overtime wages for any of the overtime hours they worked.

113.     Defendant's conduct deprived Plaintiff Droesch and the California Class Members of full and timely payment for all hours worked in violation of the California Labor Code.

114.     Defendant did not pay Plaintiff Droesch and the California Class Members for all hours worked and did not properly pay Plaintiff Droesch and the California Class Members, in violation of California Labor Code §§ 1182.12, 1194, 1197, and/or 1198.

115.     As a result of Defendant's willful and unlawful failure to pay Plaintiff Droesch and the California Class their earned wages, Plaintiff Droesch and the California Class are entitled to recover their unpaid wages, liquidated damages, costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

## FIFTH CAUSE OF ACTION

### CALIFORNIA: Failure to Pay Regular Wage

### (California Labor Code §§ 221-223)

### On Behalf of Plaintiff Droesch and the California Class

116.     Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

117.     At all relevant times, Plaintiff Droesch and the California Class Members earned "wages" for labor or services rendered to Defendant within the meaning of California Labor Code § 200(a) and/or "hours worked" within the meaning of the applicable Wage Order of the Industrial Wage Commission.

118.     Employers are required to pay their employees for all hours worked. Defendant failed to properly record and pay for Plaintiff Droesch's and the California Class Members' hours worked.  For example, Wells Fargo allowed, encouraged, or required Plaintiff and the California Class Members to clock out during their shifts, including during time opening necessary programs, following instructions, and reading emails.  Despite the provisions of California's overtime law, Defendant has willfully failed and refused to pay the California Class, including Plaintiff Droesch, overtime wages for any of the overtime hours they worked.

119.     Defendant's conduct deprived Plaintiff Droesch and the California Class Members of full and timely payment for all hours worked in violation of the California Labor Code.

120.     Defendant did not pay Plaintiff Droesch and the California Class Members for all hours worked and did not properly pay Plaintiff Droesch and the California Class Members, in violation of California Labor Code §§ 221-223.

121.     As a result of Defendant's willful and unlawful failure to pay Plaintiff Droesch and the California Class their earned wages, Plaintiff Droesch and the California Class are entitled to recover their unpaid wages, liquidated damages, costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

<u>**SIXTH CAUSE OF ACTION**</u>

**CALIFORNIA: Failure to Pay All Wages Upon Termination**

**(California Labor Code §§ 201, 202, 203)**

**On Behalf of Plaintiff Droesch and the California Class**

122.     Plaintiffs hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

123.     California Labor Code § 201 provides that any discharged employee is entitled to all wages due at the time of discharge.

124.     Where an employer willfully fails to pay discharged or resigning employees all wages due as required under the California Labor Code, the employer is liable to such employees under California Labor Code § 203 for waiting time penalties in the amount of one day's compensation at the employees' regular rate of pay for each day the wages are withheld, up to thirty days.

125.     During all relevant times, Defendant knowingly and willfully violated California Labor Code §§ 201 and 202 by failing to pay Plaintiff and members of the California Class who are no longer employed by Wells Fargo all wages owed as alleged herein.   Wells Fargo is therefore liable to Plaintiff Droesch and members of the

California Class who are no longer employed by Defendant for waiting time penalties as required by California Labor Code § 203.

126.     Plaintiff Droesch, individually and on behalf of the members of the California Class who are no longer employed by Defendant, respectfully requests that the Court award all waiting time penalties due, and the relief requested below in the Prayer for Relief.

**SEVENTH CAUSE OF ACTION**

**CALIFORNIA: Failure to Provide Accurate Wage Statements**

**(California Labor Code § 226)**

**On Behalf of Plaintiff Droesch and the California Class**

127.     Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

128.     California Labor Code § 226 provides that an employer shall furnish its employees with accurate itemized statements in writing showing gross wages earned and total hours worked by the employee, among other items of information.

129.     During all relevant times, Defendant knowingly and willfully violated California Labor Code § 226 by failing to provide Plaintiff Droesch and members of the California Class with accurate wage statements as alleged herein.  Defendant knowingly and willfully violated said Labor Code provision by providing Plaintiff Droesch and members of the California Class with wage statements that systematically undercounted the number of hours that Plaintiff Droesch and members of the California Class worked.  Defendant is therefore liable to Plaintiff Droesch and members of the California Class for providing inaccurate wage statements in violation of Labor Code § 226.

130.     Plaintiff Droesch, individually and on behalf of the members of the California Class, respectfully requests that the Court award all penalties due, and the relief requested below in the Prayer for Relief.

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW

## EIGHTH CAUSE OF ACTION

### CALIFORNIA: Unlawful and/or Unfair Competition Law Violations
### (California Business & Professions Code § 17200 et seq.)
### On Behalf of Plaintiff Droesch and the California Class

131.     Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

132.     California Business & Professions Code § 17200 et seq. prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

133.     Plaintiff Droesch brings this cause of action individually and as a representative of all others subject to Wells Fargo's unlawful acts and practices.

134.     During all relevant times, Defendant committed unlawful, unfair, and/or fraudulent acts as defined by California Business & Professions Code § 17200. Defendant's unlawful, unfair, and/or fraudulent business practices include, without limitation, failing to pay all wages owed wages, including premium wages, and failing to provide complaint meal and rest breaks.

135.     As a result of these unlawful and/or unfair and/or fraudulent business practices, Defendant reaped unfair benefits and illegal profits at the expense of Plaintiff Droesch and the California Class.  Defendant must disgorge these ill-gotten gains and restore as restitution to Plaintiff Droesch and the California Class Members all wrongfully withheld wages, including, but not limited to minimum, regular, premium, and overtime wages.

136.     Plaintiff Droesch, individually and on behalf of the members of the California Class, respectfully requests that judgment be awarded to provide restitution and interest, and the relief requested below in the Prayer for Relief, including injunctive relief to correct the practices complained of.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, by and through his attorneys, demands judgment against Defendant and in favor of Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

a. Certifying that this action may proceed as an FLSA collective action, a California class action under Rule 23 and a North Carolina class action under Rule 23;

b. Declaring that Defendant Wells Fargo's policies and/or practices of failing to pay wages for off-the-clock worked to the FLSA Collective Members violates the FLSA;

c. Declaring that Defendant Wells Fargo's policies and/or practices of failing to pay overtime wages, to pay minimum wages, to pay regular wages, to provide accurate wage statements, to pay all wages earned regularly and upon termination of employment to the California Class violate the California Labor Code;

d. Declaring that Defendant Wells Fargo's policies and/or practices of failing to pay for off the clock work violates the NCWHA;

e. Declaring that Defendant Wells Fargo's above-mentioned policies and/or practices violate California Business and Professions Code § 17200 et seq.;

f. Preliminary, permanent, mandatory injunctive relief prohibiting Wells Fargo, its officers, agents, and all those acting in concert with it, from committing in the future those violations of law herein alleged;

g. Awarding damages, liquidated damages, restitution, and/or statutory penalties to be paid by Defendant Wells Fargo for the causes of action alleged herein;

h. Awarding costs and expenses, including reasonable attorneys' fees and expert fees, pursuant to the FLSA, respective state laws, and as otherwise permitted by law;

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW

i.      Awarding class representative service payments to Plaintiffs and all other class representatives for their service to the FLSA Collective Members, the California and North Carolina Class Members, and the public; and

j.      Ordering such other and further legal and equitable relief the Court deems just, necessary, and proper.


DATED: September 28, 2020          **CHRISTINA HUMPHREY LAW, P.C**
                                   **GESSNER LAW, PLLP**


_____
Christina A. Humphrey, Esq.
Michelle Gessner, Esq.
Attorneys for Plaintiffs

1

## <u>DEMAND FOR JURY TRIAL</u>

2       Plaintiffs hereby demand trial of Plaintiff's and the members of the putative

3  class claims by jury to the extent authorized by law.

4

5

6  DATED: September 28, 2020      **CHRISTINA HUMPHREY LAW, P.C**
                                     **GESSNER LAW, PLLP**

7

8

9

10                                    _____

11                                    Christina A. Humphrey, Esq.
                                    Michelle Gessner, Esq.

12                                    Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF
FLSA AND STATE LAW