UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DROESCH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 20-cv-06751-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION AND DISMISS**<br><br>Re: Dkt. No. 28 |

Denise Droesch and Shakara Thompson filed this putative class and collective action alleging various employment-related claims under both state and federal law arising out their employment with Wells Fargo Bank. Wells Fargo has moved to compel Ms. Droesch's claims to arbitration as well as the claims of Opt-in Plaintiffs Taishia Bell, James Galligan, Jonathan Harrison, and Tavares Speer.[1] (Dkt. No. 28.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the May 13, 2021 hearing, GRANTS the motion to compel arbitration, and STAYS Ms. Droesch and the Opt-in Plaintiffs' Taishia Bell, James Galligan, Jonathan Harrison, and Tavares Speer's claims.

## BACKGROUND

**A. Complaint Allegations**

Ms. Droesch worked for Wells Fargo as Premier Phone Banker in Wells Fargo's California Business Banking Call Center. (Complaint at ¶ 2.[2]) Ms. Droesch was required to be ready to handle a call at the start of her shift which required her to perform unpaid work before the start of

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7, 13.)
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

her shift. (*Id.* at ¶¶ 3-4.) At the end of her shift, she was required to complete customer service calls, secure her workstation, lock her desk drawer, and secure any customer or propriety information at the end of their shift which likewise required her to complete unpaid work after her shift. (Id. at ¶ 4.) Ms. Droesch spent significant time performing off the clock work for which she was not paid. (*Id.* at ¶ 5.)

**B. Procedural Background**

Ms. Droesch, along with Ms. Thompson, bring class and collective claims arising out of their employment with Wells Fargo including violation of: (1) the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (failure to pay minimum, regular, and overtime wages); (2) N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13 (failure to pay as promised); (3) California Labor Code §§ 510 and 1194 (failure to pay overtime wages); (4) Violation California Labor Code §§ 1182.12, 1194, 1197, 1194.2 and 1198 (failure to pay minimum wage); (5) Violation California Labor Code §§ 221-223 (failure to pay regular wage); (6) Violation California Labor Code §§ 201, 202, 203 and 256 (failure to pay all wages upon termination); (7) Violation California Labor Code § 226 (failure to provide accurate wage statements); and (8) California Business & Professions Code § 17200 et seq. (unlawful or unfair competition law violations). (Dkt. No. 1.) After this action was filed, Opt-in Plaintiffs Taishia Bell, James Galligan, Tavares Speer, and Johnathan Harrison filed Consents to join pursuant to 29 U.S.C. Section 216(b). (Dkt. No. 6.)

Defendants' motion to compel arbitration and to dismiss Ms. Droesch and the Opt-in Plaintiffs' claims is now pending before the Court as is Plaintiffs' motion for conditional certification of their FLSA claims.[3] (Dkt. Nos. 28, 29.) The motion for conditional certification is addressed by separate order.

**C. The Arbitration Agreement**

Prior to commencing her employment with Wells Fargo, Ms. Droesch signed the Wells Fargo Mutual Arbitration Agreement (hereafter "the Arbitration Agreement"). (Dkt. No. 28-2.)

---

[3] The Court will not consider Plaintiffs' separate statement of evidentiary objections submitted with their opposition to the motion to compel arbitration. (Dkt. No. 34-4.) *See* Civ. L.R. 7-3(a),(c) (requiring require that "[a]ny evidentiary and procedural objections to the [motion or opposition] must be contained within the [opposition or reply] brief or memorandum.").

1     Among other things, the Agreement states:

>   Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration.

(Dkt. No. 28-2 at 5.)  The Arbitration Agreement provides further that

>   The Claims covered by this Agreement with any Wells Fargo entity ...include, but are not limited to, claims for discrimination, harassment, retaliation, tortious conduct, wrongful discharge, breach of contract, promissory estoppel, expense reimbursement, wages, compensation, or claims for violations of any federal, state, or local statute, regulation, or common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Rehabilitation Act, the Equal Pay Act, Worker Adjustment and Retraining Notification Act, Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments.

(*Id*.)  It also includes a class, collective, and representative action waiver which states that "[c]laims must be brought in arbitration on an individual basis only, and I agree to waive the right to initiate or participate in a class, collective, or representative action." (*Id*.)  Opt-in Plaintiffs Taishia Bell, James Galligan, Tavares Speer, and Johnathan Harrison signed the same agreements. (Dkt. Nos. 28-2 at 7-13.)

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that arbitration agreements in any "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. (internal quotation marks and citation omitted).

The FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745-46, (2011). Thus, courts must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that

3

"the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). "[T]he party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability." *Serafin v. Balco Props. Ltd.*, LLC, 235 Cal. App. 4th 165, 172-73 (2015).

Courts shall resolve any "ambiguities as to the scope of the arbitration clause itself ... in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Where parties "contest the existence of an arbitration agreement," however, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## DISCUSSION

### I. Motion to Compel Arbitration

As the party seeking to compel arbitration, Wells Fargo has the burden of demonstrating that a valid agreement exists to arbitrate the claims at issue.  Wells Fargo has met that burden. Ms. Droesch and the Opt-in Plaintiffs (collectively referred to hereafter as "Plaintiffs") fail to carry their burden of showing that the Agreement is procedurally or substantively unconscionable.

**A. The Arbitration Agreement is Valid and Covers the Claims at Issue**

Courts must apply state law in determining whether a valid agreement to arbitrate exists. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts."). Here, both parties apply California law to their respective arguments as to the existence of a valid arbitration agreement. The Court will do the same in the absence of any

4

dispute over the applicable state law.

Under California law, contract formation requires "a manifestation of mutual assent." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). "Mutual assent may be manifested by written or spoken words, or by conduct." *Id*. "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 566 (9th Cir. 2014).

Plaintiffs do not dispute that they signed the Arbitration Agreement or otherwise dispute that there are valid agreements to arbitrate here; instead, Plaintiffs contends that the Arbitration Agreement is unenforceable because (1) the agreements are procedurally and substantively unconscionable, (2) their claim under the FLSA cannot be compelled to arbitration, and (3) H.R. 963, if enacted into law at some future date, would "nullify" the arbitration agreement." None of these arguments are availing.

**1) The Agreement is not Unconscionable**

To establish unconscionability, Plaintiffs must "demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1260 (9th Cir. 2017); *see also Armendariz v. Found. Health Psychare Servs., Inc*., 24 Cal. 4th 83, 114 (2000) (noting that "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."). However, procedural and substantive unconscionability "need not be present in the same degree." *Sanchez v. Valencia Holding Co*., LLC, 61 Cal. 4th 899, 910 (2015). There is instead a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (internal quotation marks and citation omitted). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id*. at 912.

Plaintiffs insist that the Arbitration Agreement is procedurally unconscionable because it is a contract of adhesion and substantively unconscionable because its scope is limitless, discovery is

5

limited, and it requires Plaintiffs to pay arbitration fees.

**a) Procedural Unconscionability**

The procedural element of unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Wells Fargo does not dispute that the Arbitration Agreement is a contract of adhesion. (Dkt. No. 32 at 8.) The Ninth Circuit has recognized that "[w]hile California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal. 4th at 915)); *see also Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 243 (2016) ("The Agreement and its arbitration provision therefore contain at least some degree of procedural unconscionability because it is undisputed the Agreement is an adhesion contract in the employment context."). Thus, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most."[4] *Poublon*, 846 F.3d at 1262 (noting that the mere adhesive nature of an employment contract does not warrant the "same degree of scrutiny as contracts of adhesion that involve surprise or other sharp practices.") (internal quotation marks and citation omitted)).

The Court must therefore determine "whether there are other indications of oppression or surprise that would lead California courts to conclude that the degree of procedural unconscionability is high." *Poublon*, 846 F.3d at 1262. Plaintiffs have pointed to none. *See Crippen v. Cent. Valley RV Outlet*, 124 Cal. App. 4th 1159, 1165 (2004) ("Plaintiff did not introduce or rely on any evidence of the circumstances surrounding the execution of the

---

[4] Plaintiffs' reliance on *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002), for the proposition that "[w]hen the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present" is misplaced. The key is the degree of procedural unconscionability, and as the Ninth Circuit recognized in *Poublon*, the adhesive nature of an employment contract, without additional "indications of oppression or surprise," gives rise to only "a low degree of procedural unconscionability at most." 846 F.3d at 1262.

1  agreement, so he could not show inequality of bargaining power, lack of negotiation, or lack of

2  meaningful choice based on those circumstances."). Where, as here, the adhesive nature of the

3  Arbitration Agreement presents only a minimal degree of procedural unconscionability, and

4  Plaintiffs fail to show additional factors of oppression or surprise that would render the Arbitration

5  Agreement procedurally improper, Plaintiffs must demonstrate a high degree of substantive

6  unconscionability to render the Arbitration Agreement unconscionable.

### b) Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246. Plaintiff argues that the Arbitration Agreement is substantively unconscionable in three respects.

First, Plaintiffs insist that the scope of the Arbitration Agreement is "limitless" because it covers all claims "arising out of [the] application for employment, employment, or separation from employment with Wells Fargo." (Dkt. No. 30 at 17.) Not so. The Arbitration Agreement covers all matters arising out employment—such scope is not limitless and is instead the type of employment related arbitration clause that courts routinely enforce. *See, e.g., Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 182 (2015) (enforcing arbitration clause covering "[a]ny and all claims arising out of or in any way connected with your employment ... must be submitted to binding arbitration."). The case upon which Plaintiffs rely did not include a subject matter scope (like employment) as the Arbitration Agreement here. *See In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012) ("'any and all disputes' between Jiffy Lube® and Cushnie, and is not limited to disputes arising from or related to the transaction or contract at issue.")

Second, Plaintiffs maintain that under the Arbitration Agreement the AAA Employment Rules control the arbitration. (Dkt. No. 30 at 18.) Plaintiffs then go on to state that under these Rules "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues. . . ." (*Id.* (citing Quintilone Dec., ¶ 9).) Plaintiffs contend that

7

1  this limit on discovery is substantively unconscionable. The fallacy in this argument, however, is
2  that Mr. Quintilone's declaration does not include this language at paragraph 9 or elsewhere and
3  neither does the Arbitration Agreement. (Dkt. No. 30-1.) Rather, the Arbitration Agreement
4  states that "[t]he parties shall have the right to conduct adequate discovery necessary to the full
5  and fair exploration of the case, file dispositive motions, and present witnesses and evidence."
6  (Dkt. No. 28-2 at 5.) Nor is there anything substantively unconscionable regarding the AAA rules
7  for discovery. *See Trevino v. Acosta, Inc.*, No. 17-CV-06529 NC, 2018 WL 3537885, at *10
8  (N.D. Cal. July 23, 2018) (citing *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1475–76
9  (2009) (finding no meaningful difference between AAA rules for discovery and the discovery
10 rules in the California Arbitration Act, found sufficient by the California Supreme Court in
11 *Armendariz*)).

12 Third, Plaintiffs contend that the Arbitration Agreement is substantively unconscionable
13 because Plaintiffs are required to pay the fees. This argument, however, mischaracterizes the
14 Arbitration Agreement which actually states that while the plaintiff must pay the fee to start the
15 proceedings, "Wells Fargo will pay all costs unique to arbitration, including any further filing fees,
16 arbitrator fees, or AAA administrative fees." (Dkt. No. 28-2 at 5.) Generally, "when an employer
17 imposes mandatory arbitration as a condition of employment, the arbitration agreement or
18 arbitration process cannot generally require the employee to bear any type of expense that the
19 employee would not be required to bear if he or she were free to bring the action in court."
20 *Armendariz*, 24 Cal.4th at 110–11. Plaintiffs do not argue in their opposition brief that they cannot
21 pay the filing fee; however, Ms. Droesch's declaration attests that she cannot afford the initial
22 $300 AAA filing fee. (*Compare* Dkt. No. 30 at 19 *with* Dkt. No. 30-2 at ¶ 5.) Assuming the $300
23 filing fee is accurate, this fee is less than the filing fee to file an action in federal court (which
24 Plaintiffs paid here) and thus does not run afoul of *Armendariz*.[5] Requiring the employee, Ms.
25 Droesch, to pay a filing fee that is less than the civil court filing fee does not render the Arbitration

---

[5] Plaintiffs' reliance on *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1177 (9th Cir. 2003), is misplaced as there the unconscionability was that the filing fee was paid to Circuit City—not the arbitration service.

Agreement substantively unconscionable.

Relatedly, Plaintiffs argue that the Arbitration Agreement is substantively unconscionable because it allows the arbitrator to determine how costs and fees will be split between the parties, thereby "forcing an employee to pay more fees than required through the litigation process." (Dkt. No. 30 at 19.) This argument again misstates the Arbitration Agreement; it actually provides that "[u]nless ordered by the arbitrator *in accordance with applicable law*, each party shall be responsible for their own attorney, witness, and expert fees and costs." (Dkt. No. 28-2 at 5 (emphasis added).)

\*\*\*

Plaintiffs have shown only a minimal degree of procedural unconscionability due to the adhesive nature of the contract. Such a showing is insufficient to render the Arbitration Agreement as a whole unconscionable without a high degree of substantive unconscionability—a showing that has not and cannot be made on the present record.

### B. Arbitration of Plaintiffs' FLSA Claims

Next, Plaintiffs insist that Plaintiffs' FLSA claims cannot be compelled to arbitration. This argument not well taken. As the Ninth Circuit noted in *Albertson's* "under the FAA the employee's individual agreement to arbitrate all disputes was enforceable with respect to disputes over claims covered by the FLSA." *Albertson's, Inc. v. United Food & Commercial Workers Union, AFL–CIO & CLC*, 157 F.3d 758, 762 (9th Cir.1998); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) ("[e]very circuit to consider the question has held that the FLSA allows agreements for individualized arbitration") (internal citation and quotation marks omitted).

### C. Stay Pending Resolution of H.R. 963

Finally, Plaintiffs ask the Court to stay this action while the U.S. House of Representatives considers H.R. 963, the Forced Arbitration Injustice Repeal Act. Not only is Plaintiffs' motion bereft of citation to any authority which would authorize a stay under these circumstances, but it is bereft of common sense. *See Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir.), cert. denied, 140 S. Ct. 379 (2019) ("[plaintiff] cites no legal authority for her suggestion that pending legislation should entitle her to a stay… Federal courts apply duly enacted laws; they do not try to

guess which bills may or may not be enacted into law."). If courts were to stay actions every time new legislation was introduced the judicial system would grind to a halt.

## II. Motion to Dismiss or Stay

In light of the Court's conclusion that Plaintiffs' claims are subject to arbitration, the only remaining question is whether the action should be stayed or dismissed. Defendant asserts that dismissal is warranted, and alternatively, requests a stay of proceedings pursuant to 9 U.S.C. § 3. Plaintiffs only respond by opposing any stay of proceedings; however, Plaintiffs' arguments do not relate to this action and seem to be cut and paste from a prior brief.[6]

Pursuant to 9 U.S.C. § 3, the Court must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 3). Because Defendant has not moved to compel Plaintiff Thompson's claims and thus this case will continue in this Court (albeit without the currently alleged California claims), the Court concludes that a stay of Plaintiff Droesch and the Opt-in Plaintiffs' claims is appropriate here.

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion to compel arbitration of Plaintiff Droesch and the Opt-in Plaintiffs' claims. Ms. Droesch and the Opt-in Plaintiffs' Taishia Bell, James Galligan, Jonathan Harrison, and Tavares Speer's claims shall be STAYED pending disposition of the arbitration proceedings. Within 14 days of the resolution of the arbitration proceedings, Plaintiffs shall notify the Court and seek appropriate relief including a lifting of the stay.

This Order disposes of Docket No. 28.

**IT IS SO ORDERED.**

Dated: May 6, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[6] Plaintiffs' repeatedly refer to "the state court proceedings," but this action is pending in federal district court. (Dkt. No. 30 at 21-22.)