UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DROESCH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 20-cv-06751-JSC<br><br>**ORDER RE: MOTION FOR CONDITIONAL CERTIFICATION**<br><br>Re: Dkt. No. 29 |

Plaintiffs Denise Droesch and Shakara Thompson, on behalf of themselves and all others similarly situated, bring this wage and hour action against their former employer Wells Fargo Bank N.A.  Wells Fargo has moved to compel arbitration of Plaintiff Droesch and certain Opt-in Plaintiffs' claims and the Court has granted Defendant's motion by separate order.  (Dkt. No. 40.)  Plaintiff Thompson's motion for conditional certification under Section 216(b) of the Fair Labor Standards Act is now pending before the Court.[1]  (Dkt. No. 29.)  After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the May 13, 2021 hearing, and GRANTS the motion for conditional certification..

## BACKGROUND

**A. Complaint Allegations**

Ms. Thompson worked as a telephone-dedicated employee at Well Fargo; in particular, as a Financial Crimes Specialist III at Wells Fargo's Charlotte, North Caroline Fraud Department

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 18.)

Call Center. (Complaint at ¶ 2.[2]) Plaintiff, and other similarly situated employees, were "required and/or permitted" to perform unpaid work before and after their scheduled shift times including but not limited to "booting up computers, initializing several software programs, reading company issued emails and instructions at the beginning of their shifts, and completing customer service calls, securing their workstations, locking their desk drawers, and securing any customer or proprietary information at the end of their shifts." (*Id*. at ¶ 4.) Wells Fargo disciplines telephone-based employees if they are not logged into their phones and ready to handle calls prior to the start of their scheduled shift time. (*Id*. at ¶ 30.)

Wells Fargo's managers and supervisors on the call center floor were aware that "telephone based employees arrived at their work stations before the start of their scheduled shift time, logged into Wells Fargo's computers, and began working on their computers prior to the start of their scheduled shift time" and that employees "worked past the end of their scheduled shift time handling phone calls and securing their work stations." (*Id*. at ¶¶ 38-89.) Wells Fargo nonetheless failed to "make any effort to stop or otherwise disallow the pre- or post-shift work and instead allowed and permitted it to happen." (*Id*. at ¶ 43.) Wells Fargo thus maintains a policy and practice of failing to pay employees, such as Plaintiff, for all hours worked especially time spent on work tasks before and after shifts. (*Id*.)

**B. Procedural Background**

Plaintiffs Droesch and Thompson filed this action in September 2020. (Dkt. No. 1.) Plaintiffs allege violation of: (1) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (failure to pay minimum, regular, and overtime wages); (2) N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13 (failure to pay as promised); (3) California Labor Code §§ 510 and 1194 (failure to pay overtime wages); (4) Violation California Labor Code §§ 1182.12, 1194, 1197, 1194.2 and 1198 (failure to pay minimum wage); (5) Violation California Labor Code §§ 221-223 (failure to pay regular wage); (6) Violation California Labor Code §§ 201, 202, 203 and 256 (failure to pay all wages upon termination); (7) Violation California Labor Code § 226 (failure to provide

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

accurate wage statements); and (8) California Business & Professions Code § 17200 et seq. (unlawful or unfair competition law violations). (Dkt. No. 1.) Plaintiffs brought the action on behalf of a proposed nationwide collective of all individuals working in the non-exempt position of "Telephone Banker" from three years prior to the filing of this complaint onward, under the FLSA. After this action was filed, Opt-in Plaintiffs Taishia Bell, James Galligan, Tavares Speer, Johnathan Harrison, Jennifer Whitsitt, Shannon Crenshaw-Gilkey, Rihab El Talawi, LaKeiva Harris, and Adam Kimo filed Consents to join pursuant to 29 U.S.C. Section 216(b). (Dkt. No. 6.)

At the Initial Case Management Conference, the Court set a schedule for Plaintiffs to move for conditional certification. (Dkt. No. 20.) That motion is now fully briefed and pending before the Court. (Dkt. No. 29.) The day before the conditional certification motion was filed, Defendant moved to compel arbitration as to Ms. Droesch and the six of the Opt-In Plaintiffs' claims. (Dkt. No. 28.) The Court granted that motion by separate Order, staying the Ms. Droesch and the Opt-in Plaintiffs' claims pending arbitration. (Dkt. No. 40.) This leaves Ms. Thompson as the sole Plaintiff. (Dkt. No. 40.)

**LEGAL STANDARD**

Under the FLSA, an employee may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Conditional certification in the FLSA context does not "produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Instead, "[t]he sole consequence" of a successful motion for conditional certification is "the sending of court-approved written notice" to workers who may wish to join the litigation as individuals. *Id*.; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Unlike a Rule 23 class action, "the district court in a collective action plays no . . . gatekeeping role." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018).

District courts retain discretion to determine whether a collective action is appropriate. *See Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 466 (N.D. Cal. 2004). To obtain certification, the plaintiff must show that the plaintiff and the putative collective action participants are

3

"similarly situated." *Id.* According to the Ninth Circuit, "similarly situated" means "plaintiffs must be alike with regard to some material aspect of their litigation." *Campbell*, 903 F.3d at 1114. Thus, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

## DISCUSSION

Plaintiff seeks conditional certification of the following FLSA collective:

> All individuals currently or formerly employed by Wells Fargo as a Telephone Bankers in the United States at any time from three years before the filing of the initial Complaint through resolution of this action, and: (a) who did not file a timely consent to join form with the court in *Singer v. Wells Fargo Bank, N.A.*, (W.D. Tex. Case No. 5:19-cv-00679) or (b) who did not file a timely consent to join form in *Harris, et al. v. Wells Fargo Bank, N.A.* (D. Ariz. Case No. CV-17-01146-PHXDMF, consolidated with *Kerness v. Wells Fargo Bank, N.A.*, (D. Ariz. Case No. CV17-02516-PHX-DMF) or who filed a timely consent to join form in *Harris*, but whose claims here nonetheless accrued after the settlement period in that case (i.e., after December 31, 2019); (c); or who filed a timely consent to join form in *Harris/Kerness*, but whose claims here nonetheless accrued after the settlement period in that case (i.e. after December 5, 2015).

(Dkt. No. 29 at 10.)

### A. Conditional Certification

The "near-universal practice" that courts use to determine whether claims under the FLSA should proceed in a collective is the two-step certification process. *See Campbell*, 903 F.3d at 1100. Plaintiff's now pending motion for conditional certification is the first-step in this two-step process.

At this stage, "the court first makes an initial 'notice stage' determination of whether potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus whether a collective action should be certified for the purpose of sending notice of the action to potential collective action participants." *Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20-CV-01093-LHK, 2020 WL 7342709, at *3 (N.D. Cal. Dec. 14, 2020) (internal citation and quotation marks omitted). "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101 (quoting *Symczyk*, 569 U.S. at 75). The second step of

4

the certification process occurs after discovery is complete at which the party opposing conditional collective action certification may move to decertify the collective action. *Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 467 (N.D. Cal. 2004). "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield v. First NLC Financial Services, LLC*, 2006 WL 3190527, *2 (N.D. Cal. Nov. 1, 2006); *Campbell*, 903 F.3d at 1119 (applying a "substantial evidence" standard to the decertification determination).

At the first stage, "conditional certification is by no means automatic, but Plaintiffs' burden is light." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL 6431869, at *2 (C.D. Cal. Sept. 28, 2018). "The district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. The level of consideration is "lenient" and "loosely akin to a plausibility standard." *See id*.

Plaintiff challenges Defendant's policy and practices regarding tracking and recording of telephone-dedicated employees' time. In particular, Plaintiff alleges that because these employees are required to be logged into their phones by their start time, they are required to perform off-the-clock work for which they are not compensated including (1) "boot[ing] up computers, initializ[ing] several software programs, and read[ing] company emails and/or instructions" prior to the start of their shift and before they could log into "Soft Phone, which commenced and recorded the paid portion of their workday" (Complaint at ¶¶ 26-20); and (2) "completing customer service calls, closing down the software programs, logging off the system, securing their workstations, locking their desk drawers, and securing any customer or proprietary information after the end of their scheduled shift times" (*Id*. at ¶ 44).

These allegations are bolstered by the declarations of Plaintiffs Thompson and Droesch and Opt-in Plaintiff Harrison each of whom attests that they were "required to open and initialize several software programs," as well as "read company emails and instructions" prior to the start of their shift time and "[o]nly after all the processes are completed and programs started could I log into Soft Phone, which commenced and recorded the paid portion of my workday." (Dkt. No. 29-3, Droesch Decl. at ¶¶ 3-5; Dkt. No. 29-4, Harrison Decl. at ¶¶ 3-5; Dkt. No. 29-5, Thompson

Decl. at ¶¶ 3-5.) Likewise, at the end of their shifts the employees were "expected to be available to handle a call until the end of my scheduled shift time. As a result, I regularly worked past the end of my scheduled shift times when [I] logged off my software programs and computers and secured my workstations and Wells Fargo's customer and proprietary information pursuant to Wells Fargo's policies and practices." (Dkt. No. 29-3, Droesch Decl. at ¶ 6; Dkt. No. 29-4, Harrison Decl. at ¶ 6; Dkt. No. 29-5, Thompson Decl. at ¶ 6.)

To the extent that Defendant challenges these declarations as boilerplate and insists that they are contradicted by deposition testimony or by other evidence, the Court declines to consider these arguments at this early stage. "At this stage, the question 'is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing.'" *Gonzales v. Charter Commc'ns, LLC*, 2020 WL 8028108, at *4 (C.D. Cal. Dec. 4, 2020) (quoting *Flores v. Velocity Exp., Inc.*, No. 12-cv-05790-JST, 2013 WL 2468262, at *7 (N.D. Cal. June 7, 2013)). Indeed, "[w]hile the Court may consider the declarations, their use at this stage is of limited value. To afford them significant weight would otherwise contravene the lenient level of consideration required by *Campbell*." *Gonzales*, 2020 WL 8028108, at *4. "[I]t is not appropriate to weigh the evidence at the first stage of collective action certification." *Dudley*, 2018 WL 6431869, at *4 (collecting cases); *see Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) ("[C]ompeting declarations simply create a he-said-she-said situation; while it may be true that the defendant's evidence will later negate the plaintiff's claims, that should not bar conditional certification at the first stage.") (alteration and internal quotation marks omitted).

Defendant's opposition relies heavily on out-of-circuit authority and the authority within the Ninth Circuit that Defendant relies upon predates the Ninth Circuit's *Campbell* ruling. (Dkt. No. 36 at 22-26.) Further, Defendant's citation to *Campbell* is misleading as it quotes the standard applied at the second stage of the two-step certification process. (*Id*. at 26.) As the Ninth Circuit noted in *Campbell*, the district court's analysis at the first stage is focused on the adequacy—plausibility—of the pleadings, not on evidence as Defendant mistakenly suggests. *Campbell*, 903 F.3d at 1109, 1118. Rather, the evidence-based summary judgment-like analysis comes at the

6

1    second-step. *Id.* Defendant's reliance on the Fifth Circuit's recent decision *Swales v. KLLM*

2    *Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), is likewise misplaced as this Court is bound

3    by the Ninth Circuit's holding in *Campbell*.

4        Ms. Thompson has adequately alleged that she is similarly situated to other telephone-

5    based employees who because of Defendant's policies and practices are required to perform off-

6    the-clock work in contravention of the FLSA. Accordingly, Ms. Thompson has satisfied her

7    "light" burden of demonstrating that conditional certification is appropriate.

        **B. Notice to Potential Opt-in Plaintiffs**

9        Once a collective class has been conditionally certified, potential FLSA collective

10   members are entitled to "accurate and timely notice concerning the pendency of the collective

11   action, so that they can make informed decisions as to whether to participate." *Hoffmann–La*

12   *Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989). The Court has authority and discretion to

13   monitor the preparation and distribution of the notice, to "ensure that it is timely, accurate, and

14   informative." *Id*. at 172.

15       Plaintiff appears to request that they, rather, than a third-party administrator issue the

16   notice and that to this end, they be provided with class members names, job titles, addresses,

17   telephone numbers, email address, dates of employment, and date of birth, to effectuate notice by

18   mail and email. Plaintiff seeks this information for "all current and former Telephone Bankers

19   who work or have worked for Wells Fargo, at any time from September 28, 2017 through the

20   present date." (Dkt. No. 29 at 21.)

21       There are a number of issues with Plaintiff's notice plan. First, Plaintiff has not submitted

22   a copy of the proposed notice. Plaintiff first represented that the proposed notice was attached to

23   the motion for conditional certification—but it was not—and then, on reply, Plaintiff stated that

24   she "would provide a copy of the proposed notice prior to the hearing on this motion"—but she

25   has yet to do so. (Dkt. No. 29-1 at ¶ 2; Dkt. No. 39 at 7:13-14.)

26       Second, Plaintiff proposes issuing notice to a larger group of individuals than those in the

27   conditional class. Despite excluding members of the *Harris* and *Singer* settlement classes from

28   the collective here, Plaintiff seeks to send notice to "all current and former Telephone Bankers

7

who work or have worked for Wells Fargo, at any time from September 28, 2017 through the present date" including those who released their claims as part of the *Harris* and/or *Singer* settlements (Dkt. No. 29 at 21.) Plaintiff appears to allege improprieties with respect to the settlement of those actions. To the extent that Plaintiff so alleges, the proper vehicle for raising those concerns is with the district courts presiding over those actions—not via a collateral attack in this action.

Third, Plaintiff fails to respond to Defendant's objection to producing personal information such as dates of birth and email addresses. While "[c]ourts routinely allow the production of employees' mail and email addresses and telephone numbers," requests for personal information such as dates of birth are granted only where unopposed. *See Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2021 WL 1391501, at *7 (N.D. Cal. Apr. 13, 2021) (collecting cases). Plaintiff likewise fails to address Defendant's objection to Plaintiff's counsel, rather than a third-party administrator, providing notice. *See Magana-Munoz v. W. Coast Berry Farms, LLC*, No. 5:20-CV-02087-EJD, 2020 WL 3869188, at *7 (N.D. Cal. July 9, 2020) (finding that "it would be more appropriate for a third-party to distribute the notice" where plaintiffs' counsel failed to explain "why it would be preferable for them to oversee distribution of notice" and defendants sought a third-party administrator"); *see also Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187, at *6 (N.D. Cal. Sept. 18, 2007) ("The Court agrees that using a third party is the best way to ensure the neutrality and integrity of the opt-in process.").

Finally, to the extent that Defendant objects to notice being provided to employees whose claims may be barred by arbitration agreements, the Court declines to so rule at this stage. "[A]n arbitration agreement goes to Defendants' defenses, not the common policy," and thus "the enforceability of the arbitration agreements is better reserved for the step two determination, not step one." *Conde v. Open Door Marketing, LLC*, 223 F.Supp.3d 949, 969 (N.D. Cal. 2017). "For this reason, courts in this district routinely conditionally certify collective actions despite defendants' assertion that arbitration agreements bar members of the putative collective action from participating in the case." *Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20-CV-01093-LHK, 2020 WL 7342709, at *9 (N.D. Cal. Dec. 14, 2020) (collecting cases).

8

Accordingly, Plaintiff is ordered to file a proposed form of notice within 7 days of this Order. The parties shall then meet and confer via videoconference regarding the notice issues discussed in this Order and any others raised by Plaintiff's proposed form of notice. The parties shall then file a joint statement which attaches the proposed form of notice and discusses any disputes that remain.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for conditional certification is GRANTED. Plaintiff shall file the proposed form of notice within 7 days. Following the parties meet and confer, the parties shall then file a joint statement attaching the proposed form of notice **by June 1, 2021**.

This Order disposes of Docket No. 29.

**IT IS SO ORDERED.**

Dated: May 6, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

9