UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DROESCH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 20-cv-06751-JSC<br><br>**ORDER RE: WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 126 |

Plaintiffs bring this this wage and hour collective and class action against their current and former employer Wells Fargo Bank N.A. alleging that Wells Fargo fails to pay telephone-based employees for all hours worked. Following conditional certification under Section 216(b) of the Fair Labor Standards Act ("FLSA"), Wells Fargo filed the now pending early motion for summary judgment insisting that the named Plaintiffs' claims fail as a matter of law. (Dkt. No. 126.) Having considered the parties' briefs, including their supplemental submissions, the relevant law, and having had the benefit of oral argument on November 30, 2022, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment. Wells Fargo is entitled to summary judgment on Ms. Goins' claims, but it has not established that it is entitled to judgment on Ms. Thompson's or Ms. Harrison's FLSA or state law claims.

**BACKGROUND**

Plaintiffs were or are telephone-based employees of Wells Fargo. At the beginning of each workday, Plaintiffs must boot up their computers before they can begin work. Once their computers are booted up, Plaintiffs launch a telephone software program known as either Softphone or ACES, which enables them to receive phone calls. At the end of the workday, Plaintiffs go through the same process to log-off of Softphone/ACES and shutdown their

computer. This process is the same regardless of whether the employees are working at a call center or working from home.

Non-exempt employees such as Plaintiffs are responsible for recording their own time in a Windows-based computer program called "Time Keeper." As with the Softphone or ACES program, employees open the Time Keeper program once their computer boots up and manually record the time they start work as well as the time they finish work at the end of the day. According to the Wells Fargo Team Member Handbook, employees are: "responsible for submitting timely and accurate records in Time Tracker of the time you work. This includes any time spent on electronic devices for business purposes." (Dkt. No. 111-21, Lusk-Herron Decl. at ¶ 3; Dkt. No. 111-22—Dkt. No. 111-30 (2017-2021 versions of the Handbook).)

Wells Fargo sends an "annual right to be paid" reminder to all non-exempt employees which states in relevant part:

> Team members are required to record all time worked in Time Tracker, Wells Fargo's system of record for all timekeeping. Team members should record their actual work start and end times (including meal breaks) - for example, 8 :06 a.m. and 5: 10 p.m., not simply 8:00 a.m. and 5:00 p.m.

(Dkt. No. 111-21, Lusk-Herron Decl. at ¶ 4; Dkt. No. 111-31—Dkt. No. 111-35 (2017-2021 versions of the letter).) The letter also advises employees:

> If you have concerns or are receiving conflicting guidance about recording your hours worked, contact the Ethicsline at 1-800-382-7250. You may also complete the HR Advisor eForm to request a consultation or visit the Contact HR Advisor page to learn more.

(*Id*). Finally, the Wells Fargo intranet, which is called Teamworks, includes a section called "About Time Tracker" which states:

> Nonexempt team members are required to use Time Tracker to accurately fill out and complete timesheets. Team members record their actual work start and end times, including time out and back in for meals – for example, 8:06 a.m. to 5:10 p.m., not simply 8:00 a.m. to 5:00 p.m.
> …
>
> [ ] Report all your hours worked to ensure that you are paid for all time actually worked, even when it exceeds your scheduled hours.
>
> [ ] Obtain your manager's approval if you think you are going to work overtime.

2

(Dkt. No. 111-21, Lusk-Herron Decl. at ¶ 5; Dkt. No. 111-36—Dkt. No. 111-41 (2017-2021 versions of Teamworks).)

Plaintiff Kyonna Harrison began working for Wells Fargo in 2012 and continues to work out of their Banking Call Center in San Bernardino, California as an Account Resolution Specialist 3. (Dkt. No. 111-21, Lusk-Herron Decl. at ¶¶ 13-14.) Shakara Thompson worked for Wells Fargo from 2015-2021 as a Financial Crimes Specialist in Charlotte, North Carolina. (Dkt. No. 111-2, Lusk-Herron Decl. at ¶¶ 10-12.) Shana Goins worked for Wells Fargo as a Phone Banker in Phoenix, Arizona from 2010-2017. (Dkt. No. 111-21, Lusk-Herron Decl. at ¶¶ 16-17; Dkt. No. 106 at ¶ 14.) Ms. Goins went on medical leave in 2017. (Dkt. No. 111-21 at ¶ 18.) When Ms. Goins returned to work in 2019, she was placed in a training class during which time she did not answer any calls or have access to the computers. (Dkt. No. 111-4, Goins Depo. at 32:19-33:3.)

## DISCUSSION

Plaintiffs bring claims under the FLSA and their respective state laws contending that Wells Fargo failed to pay them for all time worked. Because Wells Fargo required they be "call-ready" at the start of their shift, they had to spend unpaid time before their shift began booting up their computer and reviewing emails. They similarly contend that because they had to remain call-ready until their shift ended, they spent unpaid time after their shift documenting issues that arose during calls throughout their shifts ("after-call-work") and logging off their computer. Plaintiffs concede that Wells Fargo's written policy requires employees to record all their time, including time spent before or after their shifts, but contend Wells Fargo supervisors and performance evaluation metrics discouraged them from recording the time booting up their computers at start of the day and logging off their systems at the end of the day.[1] Wells Fargo insists that Plaintiffs' claims fail because it lacked knowledge of their off-the-clock work, and any such off-the-clock

---

[1] As the Court does not rely on Plaintiffs' metrics' argument in resolving Wells Fargo's motion it does not address Wells Fargo's argument that Plaintiffs are barred from proceeding under this "theory" because it was not alleged in their complaint.

3

work was *de minimis*.

## I. FLSA Claim

### A. Wells Fargo's Knowledge of Overtime Work

The FLSA requires employers to pay employees 1.5 times their regular pay for any time worked over 40 hours per workweek. 29 U.S.C. § 207. "[A]n employer who knows or should have known that an employee is or was working overtime" violates section 207. *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Where the employer is aware of the overtime work, the employee is not required to make a claim for overtime compensation to trigger the obligation; "[h]owever, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Id*.

Wells Fargo insists that it had no knowledge of Plaintiffs' overtime work and emphasizes its written policies requiring employees to record all time worked in Time Tracker. Plaintiffs maintain that notwithstanding the policies, Wells Fargo was on at least inquiry notice that Plaintiffs were working without compensation. Drawing reasonable inferences from the record evidence in Plaintiffs' favor, a trier of fact could find the following.

First, Wells Fargo supervisors told Ms. Thompson and Ms. Harrison that notwithstanding Wells Fargo's written policy, the time they manually entered into Time Tracker should match the time they are logged into the phone system. (Dkt. No. 111-3, Harrison Depo. at 23:23-24-14, 53:2-55:16; Dkt. No. 129-2, Harrison Decl. at ¶ 5; Dkt. No. 111-2, Thompson Depo. at 41:22-42:5, 47:6-48:20; Dkt. No. 129-1, Thompson Decl. at ¶¶ 6-7; Dkt. No. 134-3, Robinson Depo. at 221:10-23.)

Second, Ms. Thompson's and Ms. Harrison's supervisors were aware or should have been aware that they did not always record their time worked before or after they were logged into the telephone system. (Dkt. No. 111-3, Harrison Depo. at 24:2-14, 25:18-23, 51:11-18, 53:7-12, 54:4-55:6, 60:3-11, 126:7-21, 164:10-14; Dkt. No. 111-2, Thompson Depo. at 41:13-42-11; Dkt. No. 111-7 at 2; Dkt. No. 134-3, Robinson Depo. at 232:14-234:1.)

4

Given the factual disputes regarding what Ms. Harrison and Ms. Thompson were told regarding Wells Fargo's time keeping policies—notwithstanding its written policy—and supervisors' awareness of their deviations from these policies and their off-the-clock work, Wells Fargo is not entitled to summary judgment on Plaintiffs' FLSA claims based on lack of knowledge of overtime work.

### B. *De Minimis* Work Doctrine

Wells Fargo also moves for judgment on Ms. Harrison's and Ms. Thompson's FLSA claims under the *de minimis* work doctrine. "As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). Courts examine three factors when determining whether otherwise compensable time is properly classified as *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1081 (9th Cir. 2016) (quoting *Lindow*, 738 F.2d at 1063). The *Lindow* test "reflects a balance between requiring an employer to pay for activities that it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'" *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1057 (9th Cir. 2010) (quoting *Lindow*, 738 F.2d at 1062).

Contrary to Wells Fargo's oral argument assertion, it bears the burden of proving the *de minimis* doctrine applies. *See Gillings v. Time Warner Cable LLC*, 583 F. App'x 712, 714 (9th Cir. 2014) (citing *Rutti*, 596 F.3d at 1057 n.10). *Corbin* does not hold otherwise; it merely holds that a defendant does not need to plead the *de minimis* doctrine as an affirmative defense. 821 F.3d at 1080. In so holding, it relied on the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). *Id.* As the Ninth Circuit has observed, in *Anderson*, the Supreme Court expressly stated that the employer has the burden of showing that "the time consumed by the activity was truly *de minimis*." *Rutti*, 596 F.3d at 1057 n.10 (quoting *Anderson*, 328 U.S. at 693). Wells Fargo has not established that it is undisputed that either Ms. Thompson's or Ms. Harrison's uncompensated time was *de minimis*.

5

### 1. Administrative Difficulty of Recording Additional Time

Generally, "[e]mployers [] must compensate employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes." *Lindow*, 738 F.2d at 1062–63. Wells Fargo insists that it would be administratively difficult to track off-the-clock time other than through their existing policy "which relies on honest and accurate self-reporting." (Dkt. No. 126 at 26.) Wells Fargo, however, does not identify the administrative difficulty; instead, it relies on language from *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, describing the administrative difficulties there. *Corbin*, 821 F.3d 1069, 1081–82 (9th Cir. 2016) ("[Defendant] would have to double-check four time stamps (clocking in/out for work; clocking in/out for lunch) for each employee on each day on the off-chance that an employee accidentally loaded an auxiliary program like AAD before loading Avaya/Kronos."). Wells Fargo asserts—without citation to the record—that it would have to "engage in the 'arduous task' of scouring computer records for possible work by Plaintiffs and comparing those records against the Time Tracker entries created by Plaintiffs on the "off-chance" the comparison generated evidence of off-the-clock work," but does not quantify the burden of doing so. (Dkt. No. 126 at 26.) In addition to the lack of evidentiary support, Wells Fargo's argument is undermined by testimony that supervisors *already* engage in this comparison to see if there are discrepancies. (Dkt. No. 134-3, Robinson Depo. at 221:10-23.)

### 2. The Aggregate Amount of Compensable Time

Next, Wells Fargo insists the amount of additional time is miniscule. "Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim." *Lindow*, 738 F.2d at 1063. "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id*. at 1062 (collecting cases). In *Lindow,* the amount of time at issue was seven to eight minutes, whereas in *Corbin* the time was less than a minute. *Id*. at 1064; *Corbin*, 821 F.3d at 1082. Wells Fargo contends that the undisputed evidence shows that even if Ms. Thompson and Ms. Harrison had uncompensated time, it was under a minute a day.

As to Ms. Thompson, Wells Fargo argues that in light of her testimony that she took five to

seven minutes to reach her desk after badging in at the call center entrance, and its expert's data analysis, Ms. Thompson "*could* log into her telephone software in less than one minute." (Dkt. No. 126 at 27 (emphasis added).)  That she *could* boot up her computer and be call ready in less than a minute, however, does not establish as a matter of undisputed fact how much unpaid work Ms. Thompson engaged in. Wells Fargo's expert, Dr. Borhani, merely identifies three days when Ms. Thompson's first badge swipe was less than five minutes before her first phone log in.  (Dkt. No. 126-1, Bohani Decl.at ¶ 23.)  Given that Ms. Thompson worked 842 shifts between 2016-2021, Dr. Borhani's testimony as to three under five-minute log-ins does not establish as an undisputed fact that Ms. Thompson's daily unrecorded time was *de minimis*.

As for Ms. Harrison, Wells Fargo urges that given her testimony that she took two to three minutes after badging into her building's entrance to reach her desk, and Dr. Borhani's analysis, "it regularly took Harrison fewer than three minutes after badging into the building to be fully logged onto her computer and telephone software, demonstrating that she also was able to log into her telephone in less than one minute." (Dkt. No. 126 at 27.)  Ms. Harrison testified, however, that it regularly took her seven to nine minutes or longer to be logged into all computer programs, including the telephone software.  (Dkt. No. 129-2, Harrison Decl. at ¶ 13; Dkt. No. 111-3, Harrison Depo. at 60:22-61:10.)  Thus, at a minimum, there is a dispute of fact.

Wells Fargo next argues that accepting the testimony of Plaintiffs' expert, Dr. Kriegler, Ms. Thompson has a total of 6.74 hours of unpaid potentially compensable time and Ms. Harrison has a total of 28.39 hours of unpaid potentially compensable time, and that such amounts, averaged over their total work days, are *de minimis* as a matter of law. (Dkt. No. 134 at 18 n.12.)  Dr. Kriegler's analysis, however, merely identifies when the time manually entered in Time Tracker was *less* than the time in which Ms. Thompson and Ms. Harrison were logged into Softphone (and thus presumably call-ready). (Dkt. No. 129-4, Kriegler Decl. at ¶¶ 13-14.)  Thus, it does not account for the time before they logged into Softphone, but were working by logging into their computer or reviewing emails.

Wells Fargo has thus failed to show by undisputed evidence that Plaintiffs' uncompensated time is miniscule either on a daily or aggregate basis.

7

### 3. The Regularity of the Additional Time

Finally, courts "consider whether the claimants performed the work on a regular basis." *Lindow*, 738 F.2d at 1063. Drawing all inferences in Plaintiffs' favor, their declarations are sufficient to create a dispute of fact as to whether they performed the off-the-clock work on a regular basis. While Ms. Harrison conceded that the off-the-clock work did not happen every day, she stated that it was frequent. (Dkt. No. 129-2 at ¶ 13 ("Of course not all of this happened every day but a lot of times.").) Ms. Thompson likewise attested that she "sometimes" did work before and after her shift that was not recorded. (Dkt. No. 129-1 at ¶ 20.) Wells Fargo offers no evidence to the contrary and instead objects to this testimony under the sham affidavit rule.

Under the sham affidavit rule a "party cannot create an issue of fact by an affidavit contradicting ... prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). To apply the rule, the court must "make a factual determination that the contradiction [is] actually a sham" and conclude that the inconsistency is "clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577 F.3d at 989, 998 (9th Cir. 2009). A declaration that "elaborates upon, explains, or clarifies prior testimony" does not trigger the exclusion. *Id.* (citation omitted).

Wells Fargo argues that Ms. Thompson testified that she was unsure if her supervisors ever told her to match her Time Tracker Time to her Softphone time and she could only recall one instance where she informed her supervisor that she had worked off-the-clock, but her declaration attests that she was instructed to match her Time Tracker and Softphone times and that she informed her supervisor that she worked overtime on more than one occasion. (Dkt. No. 134 at 9 (citing Dkt. No. 111-2, Thompson Depo. at 63:2-15, 99:6-18; Dkt. No. 129-1, Thompson Decl. at ¶ 7-8, 14-15.) A complete review of Ms. Thompson's testimony demonstrates that there is no blatant contradiction—she testified that her supervisor asked her to change her time "several different times," which is consistent with her declaration statement that her supervisor questioned her when her Time Tracker and Softphone time were not the same, and told her that her Time Tracker needed to match her Softphone time. (*Compare* Dkt. No. 11-2, Thompson Depo. at 50:19-24 *with* Dkt. . No. 129-1, Thompson Depo at ¶ 8.) Likewise, while Ms. Thompson only testified to one specific instance when she advised her supervisor of her off-the-clock work, her

8

elaboration on this testimony in her declaration as to two other instances is not a clear and unambiguous inconsistency for purposes of the sham affidavit rule.

Nor is there a blatant contradiction between Ms. Harrison's testimony that she understood Wells Fargo's policy that all time worked must be recorded, and her declaration statements indicating confusion regarding the policy. Ms. Harrison testified consistently that while she understood the written policy, management advised her not to follow that policy. (Dkt. No. 111-3, Harrison Depo. at 53:7-54:11; 55:7-16.) In her declaration, she testified that there was confusion as to "what constitutes 'time worked'" because, as an example, one supervisor instructed employees they need to be ready to take calls at the start of their shift—suggesting they were not working for purposes of Time Tracker until they were ready to take calls. (Dkt. No. 129-1, Harrison Decl. at ¶ 7.)

Wells Fargo has thus failed to show by undisputed evidence that Plaintiffs' uncompensated time was irregular.

\*\*\*

As the moving party on summary judgment with the ultimate burden on the *de minimis* issue, Wells Fargo "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). It has not done so here. The evidence may support a finding that Plaintiffs' off-the-clock time was both *de mininis* in the aggregate and irregular, but Wells Fargo has not proved this fact as matter of law.

**C. Plaintiff Goins' FLSA Claim**

Wells Fargo also moves for summary judgment on Plaintiff Goins' FLSA claim arguing that she did not perform the type of work at issue in the FLSA claim; namely, handling phone calls relating to Wells Fargo's business. (Dkt. No. 106 at ¶¶ 25-69.)

Plaintiffs do not dispute that the statute of limitations period for Ms. Goins' FLSA claim commenced on September 27, 2017. (Dkt. No. 129 at 23-24.) While Ms. Goins began working for Wells Fargo in 2010, she was on medical leave from August 2017 through May 2019. (Dkt. No. 111-4, Goins Depo. at 32:19-33:3.) Thus, the work at-issue is what she did starting in May

9

1 2019.  Wells Fargo argues that Ms. Goins did not perform any relevant work because when she

2 returned to work in May 2019, she was placed in a training class.  (*Id*. at 20:12-21:6.)  It highlights

3 Ms. Goins' testimony that during the training class, she did not have access to a computer and she

4 did not answer calls from customers.  (*Id*. at 29:2-22.)  She "was locked out." (*Id.* at 29:23.)

5       In opposing summary judgment, Plaintiffs do not dispute that Ms. Goins did not perform

6 call center work; instead, they identify her testimony that she was not sure she was paid for all the

7 hours she worked during her training period.  (*Id*. at 21:14-19 (Q: As you sit here today, do you

8 have any reason to believe that you were not paid for the time that you worked during those three

9 days of training in June of 2019, two or three days? A: I may have, may have not been.  I don't

10 know at this time.").  On summary judgment, the party who bears the burden of proof on a

11 dispositive issue must offer specific evidence demonstrating a factual basis on which it is entitled

12 to relief.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  Plaintiffs have not done

13 so—Plaintiffs were required to respond to Wells Fargo's argument that there is no evidence

14 supporting Ms. Goins' FLSA claim with *evidence* supporting her claim.  Ms. Goins' uncertainty as

15 to whether she was paid is not evidence on which a reasonable trier of fact could find that she was

16 not paid.

17       Wells Fargo is therefore entitled to summary judgment on Ms. Goins' FLSA claim.

18 **II. State Law Claims**

19       **A. Ms. Harrison and Ms. Thompson's State Wage and Hour Claims**

20       Wells Fargo argues that it is entitled to summary judgment on Ms. Harrison and Ms.

21 Thompson's state law wage and hour claims for the same reasons it is entitled to summary

22 judgment on the FLSA claim.  Because summary judgment on the FLSA claims is denied,

23 summary judgment on these state law claims is likewise denied.

24       **B. Ms. Harrison's UCL Claim**

25       Plaintiffs concede that Ms. Harrison's UCL claim must be dismissed without prejudice

26 under *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311-13 (9th Cir. 2022), because she has an

27 adequate remedy at law available.  (Dkt. No. 129 at 29.)   Accordingly, the UCL claim is

28 dismissed without prejudice for lack of equitable jurisdiction.

**C. Ms. Goins' Arizona Claim is Time Barred**

Wells Fargo contends that Ms. Goins' Arizona state law claim is barred by the statute of limitations. Plaintiffs do not dispute that the claim was filed beyond the one-year statute of limitations, but contend that Ms. Goins is entitled to equitable tolling under the California Judicial Council's Emergency Rules adopted on April 6, 2020, in light of the COVID-19 pandemic. (Dkt. No. 129 at 28-29 (citing Cal. Rules of Court, Emergency Rule 9).)

Emergency Rule 9 tolled the statute of limitations on the commencement of civil causes of action brought in California state courts. While California federal courts sitting in diversity have applied Emergency Rule 9 to toll the statute of limitations, "California federal courts have been hesitant to apply Emergency Rule 9, [] in cases exercising federal question jurisdiction" such as this one. *Shubin v. Universal Vacation Club*, No. 22-CV-2748 RSWL-AGRx, 2022 WL 3577247, at *3 (C.D. Cal. Aug. 18, 2022) (collecting cases); *see also Timboe v. Clark*, No. 3:20-CV-08719-WHO, 2022 WL 991721, at *4 (N.D. Cal. Mar. 31, 2022) (agreeing that Rule 9 applies when a federal court is assessing California claims). Plaintiffs have cited no authority—and the Court is unaware of any—which would allow it to apply California rules of equitable tolling to a claim arising under Arizona law.

Accordingly, Ms. Goins' Arizona state law claim is barred by the statute of limitations and Wells Fargo is entitled to summary judgment in its favor on this claim.

**CONCLUSION**

For the reasons stated above, Wells Fargo's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is granted as to Ms. Goins claims, but otherwise denied. Ms. Harrison's UCL claim is dismissed without prejudice.

The Court sets a further case management conference for February 2, 2023 at 1:30 p.m. via Zoom video with an updated joint case management statement due January 26, 2023.

**IT IS SO ORDERED.**

Dated: December 14, 2022

JACQUELINE SCOTT CORLEY
United States District Judge

11