UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DROESCH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 20-cv-06751-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND SIEM DISCOVERY DISPUTE**<br><br>Re: Dkt. Nos. 153, 164 |

Plaintiffs filed this wage and hour putative class and collective action in September 2020. (Dkt. No. 1.)[1] The Court subsequently granted Wells Fargo's motion to compel arbitration as to Plaintiff Droesch and certain Opt-in Plaintiffs, and granted Plaintiff Thompson's motion for conditional certification under Section 216(b) of the Fair Labor Standards Act ("FLSA"). (Dkt. Nos. 40, 42.) Following issuance of an FLSA opt-in notice, the Court granted Plaintiffs' motion to amend the complaint to add additional named plaintiffs and an Arizona state law claim. (Dkt. No. 76.) Then, more than 18 months after Plaintiffs filed this lawsuit, they moved to amend the complaint again. (Dkt. No. 99.) The Court granted the motion in part and denied it in part and the Second Amended Complaint was filed on May 25, 2022. (Dkt. Nos. 105, 106.) The Court subsequently denied Defendant's motion for summary judgment on the named Plaintiffs' individual claims. (Dkt. No. 146.)

Now pending before the Court is Defendant's motion for a protective order. (Dkt. No. 153.) Relevant to the motion is the parties' Joint Statement. (Dkt. No. 164.) Having considered the parties' submissions, and having heard oral argument on March 30, 2023, the Court GRANTS

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the motion in PART as set forth below.

## DISCUSSION

In January 2022, Plaintiffs noticed Defendant's 30(b)(6) deposition. In response, Defendant produced eight different witnesses to testify on over 55 different topics. (Dkt. No. 153-1 at ¶ 6.) Following the Court's summary judgment order, Plaintiffs served two additional 30(b)(6) notices, one of which also seeks documents. (Dkt. Nos. 153-3, 153-4.) Defendant moves for a protective order shielding it from producing discovery in response to these requests.

Rule 26(c) states, in relevant part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one of more of the following: (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c). The party opposing disclosure has the burden of proving "good cause," which requires a showing that specific prejudice or harm will result if the protective order is not granted. *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).

The discovery requests Defendant challenges involve (1) Defendant's Windows Environment and (2) metrics and the related grace period. Defendant seeks an order barring this discovery on the grounds Plaintiffs were required to first seek leave of court before serving a second (and third) 30(b)(6) notice, and, in any event, the discovery sought is irrelevant and unduly burdensome. The Court is not persuaded that Plaintiffs were required to seek leave before serving a second and third 30(b)(6) deposition notice. *See, e.g.*, *Heath v. Google*, No. 15-cv-01824-BLF (VKD), 2018 WL 4491368, at *2 (N.D. Cal. Sept. 19, 2018). The better approach is to determine if the requested discovery is relevant and consistent with Rule 26(b)(1).

### A. Wells Fargo Windows Environment (153-3)

The primary inquiry here is whether data indicating when employees logged in or out of CIV, Windows, Outlook, Jabbr, and/or Softphone/ACES can be located and produced from SIEM (Security and Event Management), a system used for cybersecurity purposes. The purpose of SIEM is to detect unauthorized access. Defendant advised Plaintiffs that it could not be produced; so, pursuant to court order, Defendant was required to have its IT specialist(s) meet with

1   Plaintiffs' expert who believes it can be produced.  (Dkt. No. 155 at 1.)  That meeting occurred on
2   March 17, 2023 and was transcribed.  The Court has reviewed the transcript of the meeting.  (Dkt.
3   No. 164-1.)
4         The Court grants the motion for protective order as to the SIEM inquiry.  Defendant's IT
5   specialists were prepared to and did answer the relevant questions; they appeared helpful and non-
6   evasive.  Defendant has established that it does not have the ability to produce relevant data.
7   Indeed, it is undisputed SIEM as used by Defendant only stores data for one year and so, as of
8   today, such data would only go back to April 2022 and thus not be of much use, even apart from it
9   not showing what Plaintiffs hoped it would show.  In the Joint Statement, Plaintiffs suggest SIEM
10  data (specifically, SPLUNK documentation) can be "automatically collected and stored with a
11  Splunk forwarder."  (Dkt. No. 164-1 at 91.)  But they do not explain how storing such data going
12  forward would have much relevance to this case, let alone how it would be reasonable to order
13  Defendant to do so.  To the extent they are suggesting Defendant did store such information, there
14  is nothing before the Court that supports that suggestion.  Plaintiffs' insistence that "[o]ther
15  defendants have clearly stored similar data," (Dkt. No. 164-1 at 91), is unpersuasive.  The cited
16  case did not involve SIEM and says nothing about where the data from that different defendant
17  came from.
18        Plaintiffs also contend Defendant's 30(b)(6) deponent's testimony that Windows login data
19  is only stored on each employee's Windows computer for two days to two weeks was false
20  because of the SIEM data.  But the Court does not fault the deponent for not knowing about
21  Defendant's cybersecurity programs, especially since none of the 30(b)(6) topics specifically
22  addressed them.
23        As Plaintiffs' opposition to the motion for a protective order as to Dkt. No. 153-3
24  addresses only SIEM, Defendant's motion is granted as to that 30(b)(6) notice.  Defendant has
25  shown harm from a discovery request seeking irrelevant and unobtainable discovery.
26      **B.**    **Metrics and Grace Period (153-4)**
27          **1.**    **30(b)(6)**
28  Plaintiffs seek 30(b)(6) testimony regarding Defendant's (1) employee performance

3

1  metrics and quality scores, and (2) the grace period during which Defendant contends employees
2  are compensated prior to and after their SoftPhone login/logout times pursuant to Defendant's
3  policy that employees record their own time. Defendant argues the discovery is not relevant to
4  any defense or claim pled in the Second Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1). The
5  Court agrees, in part.

6        The Second Amended Complaint, filed less than one year ago, and nearly two years after
7  this action was filed, alleges Plaintiffs and the collective and putative class—Wells Fargo
8  telephone employees—were not paid for all time worked. In particular, they allege that to perform
9  their work, they had "to be logged into Wells Fargo's telephone systems and call queue." (Dkt.
10 No. 106 at ¶ 28.) And, to be logged into the systems and queue, Plaintiffs had "to arrive at their
11 work station prior to their scheduled shift time and boot up computers, initialize several software
12 programs, and read company emails and/or instructions." (*Id.* at ¶ 29.) These software programs
13 included "DAT, Hogan, CIV, Visa, Claims, [and] SOTA, among others." (*Id.* at ¶ 31.) "Only
14 after all the processes are completed and programs started could Plaintiffs and other similarly
15 situated employees log into Soft Phone, which commenced and recorded the paid portion of their
16 workday." (*Id.* at ¶ 32.) Thus, Plaintiffs' theory is that because they were not paid until they were
17 logged into SoftPhone, and because they had to take several steps to log into SoftPhone and be
18 ready to take calls, they performed unpaid work before and after they were logged into SoftPhone.

19       They allege further Defendant was aware employees were engaging in this "unpaid" work
20 prior to their scheduled shift time by observing employees

> booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, as well as completing customer service calls, closing down the software programs, logging off the system, securing their workstations, locking their desk drawers, and securing any customer or proprietary information after the end of their scheduled shift times.

25 (*Id.* at ¶ 47.) In other words, Plaintiffs' off-the-clock theory pled in the Second Amended
26 Complaint is that the telephone employees were only paid for time logged into SoftPhone or at
27 most, their scheduled shift time, and therefore all work performed outside those parameters was
28 uncompensated.

4

Employee performance metrics do not tend to prove that theory. This is especially so given that on summary judgment, it was undisputed that the telephone employees' pay is not restricted to their scheduled shift times or time logged into SoftPhone; instead, Defendant's policy and practice is to have employees manually enter their time worked and that they should record all time worked, including time working on electronic devices. (Dkt. No. 146 at 2-3.) And, in any event, in their opposition to the protective order, Plaintiffs do not explain how metrics tend to prove their claims pled in the Second Amended Complaint. (Dkt. No. 156 at 13-14.) They assert that metrics will show a common policy that required employees to be on their phones at the beginning of their shift and push other work outside their shift, work for which they were not paid, but that is different from what the Second Amended Complaint alleges. It alleges the policy was that they were only paid while logged into SoftPhone and thus the work needed to get into SoftPhone was unpaid. Plaintiffs' relevance assertion also does not take into account that Defendant's policy was that employees manually record their time, including time on electronic devices.

Plaintiffs contend further that they did not learn the importance of employee metrics until they prepared their opposition to Defendants' motion for summary judgment and, in particular, took the deposition of Defendant's former director of the Charlotte, North Carolina call center. (*Id.*) The cited deposition testimony sheds no light on how metrics tend to prove the alleged off-the-clock claims as pled in the Second Amended Complaint. Plaintiffs' insistence that it shows a common policy relevant to class certification is of no help because they have still not explained how that common metrics policy tends to prove off-the-clock work as pled. To the extent Plaintiffs contend the metrics pressured employees not to record all of their time worked notwithstanding Defendant's written policy, that theory of off-the-clock work is nowhere pled, or even hinted at, in the Second Amended Complaint.

The Grace Period category is somewhat different. While it is related to metrics, Plaintiffs' notice defines it as the "time before and after softphone login and logout respectively during which DEFENDANT contends that EMPLOYEES are entitled to compensation based on recording their time pursuant to DEFENDANT'S HONOR SYSTEM." (Dkt. No. 153-4 at 6.)

Defendant's honor system, in turn, is defined as Defendant's requirement that employees record their own time for compensation purposes. The honor system is relevant to Defendant's defense. While Plaintiffs have obtained some testimony on the issue, Defendant does not assert that it was a 30(b)(6) topic. The Court will allow Plaintiffs one hour of additional 30(b)(6) testimony on how the grace period relates to/affects the policy that employees manually record their time worked.

### 2. Document request

For the reasons explained above, most of the document requests are also not relevant to a claim in the Second Amended Complaint or a defense. The exceptions are Request Nos. 7, 9, 11, 12, and 13 as all squarely relate to a defense; namely, THE HONOR SYSTEM. Even those requests, however, are plainly overbroad. In any event, the Court will grant the request for a protective order except to the extent requests seek documents that show the relationship between THE HONOR SYSTEM and the grace period.

### CONCLUSION

Defendant's motion for a protective order is GRANTED in part and DENIED in part as set forth above. Plaintiffs' objection to Defendant's reply evidence is OVERRULED; the proffered evidence fairly responded to Plaintiffs' arguments. The administrative motion to seal (Dkt. No. 164) is GRANTED in part and DENIED in part. The parties may file the attachments under seal; however, the motion does not establish that there is good cause for the entirety of the Joint Statement to be filed under seal. *See* N.D. Cal. Civ. L.R. 79-5(b)(a)(ii). Accordingly, the motion to file the Joint Statement under seal is DENIED without prejudice to the parties resubmitting the motion in accordance with the local rule. The Court sets a further case management conference for April 27, 2023 at 1:30 p.m. via Zoom. An updated joint case management conference statement is due one week in advance.

This Order disposes of Docket Nos. 153, 164.

**IT IS SO ORDERED.**

Dated: April 5, 2023

JACQUELINE SCOTT CORLEY
United States District Judge